UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KATHY ORSO, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 04 C 0114 |
| | ) | |
| v. | ) | Judge Joan B. Gottschall |
| | ) | |
| BAYER CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is a motion for summary judgment filed by defendant Bayer Corporation ("Bayer"). For the reasons stated below, the motion is granted and, consequently, judgment is entered in favor of Bayer.

### I. BACKGROUND[1]

On January 8, 2004, the plaintiff, Kathy Urso ("Urso"),[2] filed a putative class-action complaint against Bayer alleging strict liability, negligence, consumer fraud, and deceptive trade practices. Diversity jurisdiction exists because Urso is a citizen of Illinois, Bayer is a citizen of Indiana and Pennsylvania, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. The parties agree that Illinois law applies.

---

[1] Facts are largely taken from the parties' Rule 56.1 statements of material facts and are undisputed unless otherwise noted. Other background facts are drawn from the docket in this case and are appropriate matters for judicial notice. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (noting that judicial notice of court records is appropriate). The court notes that Urso objects to Bayer's use of the verb "admit" in its statements of material fact, for example that Urso "admits" that she began using Neo-Synephrine® in or around June of 1990. Rule 56.1 discusses undisputed facts, not admissions, so Urso's objection is technically correct. However, in the case of Urso's own deposition testimony, any fact to which she testified constitutes an admission in an evidentiary sense, Fed. R. Evid. 801(d)(2), and the technical distinction Urso draws makes little practical difference.

[2] Urso's name is misspelled in the caption and the docket as "Orso."

On June 27, 2008, the court dismissed Urso's claims for consumer fraud and deceptive trade practices after Urso failed to file any response to Bayer's motion to dismiss. Thus, at issue are Urso's claims of strict liability and negligence, as alleged in her Second Amended Complaint. In these counts, Urso alleges that she has suffered nasal and sinus tissue damage and a dependence on the topical nasal decongestant, Neo-Synephrine®, which she alleges is defective and unreasonably dangerous in design and also negligently designed and packaged. *See* 2d Am. Compl. (Counts I & II). No class certification motion has been filed as of this date and Urso remains the sole named plaintiff.

The undisputed facts reveal that Urso has used Neo-Synephrine®, or a similar product, on a daily basis since around June 1990. She began using Neo-Synephrine® after seeing her doctor, Dr. Desai, regarding a stuffed up nose and breathing difficulties. She read the directions on the Neo-Synephrine® packet before using the product and she knew that the product should not be used for more than three days. She kept using the product "because, without it, if someone were to put their hand over my mouth, I would have died. . . . [My nose] is so swollen inside, I can't breathe."[3] Urso Dep. 25:19-23, Ex. A to Supp. Materials for Def.'s Mot. for Summ. J. At some point in 1991, Urso met with Dr. Desai again to discuss options to stop using Neo-Synephrine®. She tried other medication, but upon concluding that nothing else worked, she returned to using Neo-Synephrine® even though Dr. Desai "thought that [she] shouldn't be using it."[4] *Id.* at 26:4-7.

Urso, suffering from cold and flu symptoms, consulted a second doctor, Dr. Calabria, on September 11, 2000. Dr. Calabria diagnosed Urso as having "chronic rhinitis with likely

---

[3] Urso fairly disputes the inference that this statement means she knew she was "dependent" upon Neo-Synephrine® but she does not dispute that Urso made this statement in her deposition.
[4] Urso disputes this fact; however, she cites to the wrong section of the record in disputing the accuracy of the deposition testimony. The court deems the fact undisputed.

addiction (physiologic) to nasal decongestant drops." He advised her to use a different product to try to wean off nasal decongestants, including Neo-Synephrine®. He also discussed with her the problem of "rebound congestion," namely that "when coming off [products like Neo-Synephrine®], people can get more congested[.]"[5] Calabria Dep. 21:12-14, Ex. B to Supp. Materials for Def.'s Mot. for Summ. J. Dr. Calabria prescribed Nasonex® so that Urso could wean herself off Neo-Synephrine®; however, because Urso believed it did not work as effectively, she discontinued the Nasonex® and resumed daily use of Neo-Synephrine®.

In June 2003, Urso's husband had a chance encounter with a man, Ted Kelso ("Mr. Kelso"). Mr. Kelso mentioned that he was addicted to Neo-Synephrine®, which he said caused rebound congestion, and that he had nasal tissue damage from extended use of the nasal spray. He told Urso's husband that he had filed a lawsuit against Bayer and provided contact information for his lawyer. Urso sought legal advice from Mr. Kelso's lawyer shortly thereafter. Urso informed the lawyer that she had not heard that Neo-Synephrine® could be the cause of her dependency on the product or that it could be the cause of her ongoing congestion until her husband spoke to Mr. Kelso. Urso filed suit against Bayer on January 8, 2004.

---

[5] Urso disputes that the doctor referred to the term "rebound congestion" during the conversation. The doctor stated in his deposition that he "discussed rebound congestion," and his Progress Notes support this statement. *See* Calabria Dep. 21:4-15, Ex. B to Supp. Materials for Def.'s Mot. for Summ. J.; *id.* Ex. B, Attach. 2 at L7 (doctor's notes). Urso does not cite to the record, for example deposition testimony or rebuttal affidavit averments, in support of her denial. Nor does she actually dispute that the doctor discussed the symptoms of rebound congestion, namely that "if you use [a product such as Neo-Synephrine®], then your nose will get stuffy again, so you'll have to use it." Urso Dep. 44:7-9, Ex. A to Supp. Materials for Def.'s Mot. for Summ. J.; *see also id.* at 42:6-12 (stating that Urso is sure that the doctor told her that it was important to stop using nose drops and that continued use could damage her nasal passages). Urso's dispute is both unsupported by the record and irrelevant; the issue is whether Urso was alerted to a potential problem with her use of Neo-Synephrine®, not whether she was made aware of the proper medical terminology for the problem.

## II. ANALYSIS

Bayer argues that Urso's suit is barred by the applicable statute of limitations and that, therefore, Bayer is entitled to summary judgment in its favor. Urso contends that there is a question of material fact as to when she knew or should have known about the wrongful cause of her alleged injury, and that, therefore, the statute of limitations issue must go to the jury.

**A.     Legal Standard**

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A 'genuine issue' exists where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 608-09 (7th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. In response, the non-moving party cannot rest on the pleadings, but must designate specific material facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324. When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the opposing party. *AA Sales & Assocs., Inc.*, 550 F.3d at 609.

**B.     Arguments**

In Illinois, "[t]he general rule is that the limitations period begins to run 'when facts exist which authorize the bringing of an action.'" *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. Ct. 2006) (quoting *Schreiber v. Hackett*, 527 N.E.2d 412, 413 (Ill. 1988)). Thus, "a cause of action accrues when all the elements of the cause of action are present." *Id.* However, Illinois also recognizes the "discovery rule," which "can delay the commencement of the limitations period where an injury has already occurred but has not been discovered." *Id.* at 36.

The parties do not dispute that the relevant statute of limitations for strict liability claims is two years. *See* 735 Ill. Comp. Stat. 5/13-213(b) (product liability claims); *Allstate Ins. v. Menards, Inc.*, 782 N.E.2d 258, 262 (Ill. 2002) (noting that the applicable limitations period under § 13-213 for personal injury, as opposed to property damage, is the same as that under § 13/202); *see also* 735 Ill. Comp. Stat. 5/13-202 (two year statute of limitations for personal injury claims). Nor do they dispute that the statute of limitations for Urso's negligence claim is two years. *See* § 13-202 (disallowing actions brought more than two years after the plaintiff "knew, or through the use of reasonable diligence should have known" about the injury); *Werckenthein v. Bucher Petrochemical Co.*, 618 N.E.2d 902, 907 (Ill. App. Ct. 1993) (noting that "[t]here is little practical difference between the limitations period" for strict liability and negligence claims). Thus, if Urso's claims accrued before January 8, 2002, which is two years before the date she filed this case, the claims are time-barred.

The parties also agree that the discovery rule applies to delay the commencement of the limitations period beyond the date when Urso began using Neo-Synephrine® in 1990. The rule provides that "the cause of action accrues when the plaintiff knows or reasonably should know of

5

an injury and also knows or reasonably should know that the injury was caused by the wrongful acts of another." *See Nolan v. Johns-Manville Asbestos*, 421 N.E.2d 864, 868 (Ill. 1981) (holding that once a plaintiff knows or reasonably should have known this, "the party is under an obligation to inquire further to determine whether an actionable wrong was committed"). Although the parties do not, for the most part, disagree about the events that happened,[6] they do dispute which of those events triggered the two-year statute of limitations. Thus, the sole question before the court is whether the undisputed facts demonstrate, as a matter of law, that Urso knew or should have known of the alleged wrongful cause of her injury before January 8, 2002 or whether this question is subject to different determinations by a reasonable jury such that summary judgment is precluded.[7] *See Aebischer v. Stryker Corp.*, 535 F.3d 732, 734 (7th Cir. 2008) (noting that "the date on which a plaintiff receives inquiry notice is a fact question for the

---

[6] In her response, Urso often fails to respond appropriately to Bayer's statement of material facts. Where statements are disputed without reference to the record in support, or where the reference does not demonstrate any genuine dispute, the court treats the statements as undisputed. Local Rule 56.1(b)(3)(C). Additionally, Urso presents factual material in response, including affidavits from Urso and her husband, without any statement of the "additional facts that require the denial of summary judgment." *Id.* Bayer moves to strike Urso's extensive discussion concerning Neo-Synephrine®, which includes inches of exhibits, because it is irrelevant, is not based on admissible evidence, and does not comply with Local Rule 56.1. The court agrees. Of particular concern, Urso states that her "statements concerning the history of Neo-Synephrine® is [sic] based upon the unverified beliefs of plaintiff's counsel." Pl.'s Resp. to Def. Bayer Corp.'s Mot. for Summ. J. at 7 n.1. Although Urso asserts that the information is unverified because Bayer has not complied fully with discovery requests, this does not excuse placing "unverified" evidence before the court, particularly when its relevance to the statute of limitations issue is tenuous at best. The court has, therefore, disregarded as irrelevant § IV of Urso's response and exhibits C through H and J through T. It has also disregarded Bayer's reply and rebuttal exhibits on these matters. It considers Urso's exhibits A, B, and I and the additional facts proffered in the response, despite their non-compliance with the local rules, and has examined the record to determine whether it supports the additional factual allegations.

[7] Urso does not seem to dispute that she knew she had suffered an injury before January 2002. Rather, she argues that she did not know that her use of Neo-Synephrine® was the allegedly wrongful cause of her injuries, namely the dependence and rebound congestion. Since Urso must have learned of the injury no later than she learned of its alleged wrongful cause, the question of when Urso learned of the injury does not affect the court's conclusion.

6

jury" unless "the jury could draw but one conclusion from the evidence").

Bayer argues that the undisputed facts "demonstrate that [Urso] perceived that she suffered from an injury, dependence and rebound congestion, sought medical advice to treat her injury, and obtained medical advice specifically instructing her that the products were contributing to her injuries, and prescribing alternative products to help her cease using Neo-Synephrine®." Def.'s Mem. in Supp. of Summ. J. at 8. Urso takes the position that her averments regarding the June 2003 meeting with Mr. Kelso establish a sufficient question of fact to survive summary judgment. Before the court reaches the merits of the parties' arguments, it notes that Urso's assertion that the date on which the statute of limitations began to run is a fact question for the jury is a general, but incomplete, statement of the law. A more accurate statement of the inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251-52. Such a determination requires a full review of the record.[8]

Urso avers that she "never had reason to know nor did I know that Neo-Synephrine® . . . was the very cause of [her problems] until the summer of 2003 when my husband found out from Mr. Kelso about his experience and his lawsuit against Bayer for the same problems." Urso Aff. ¶ 11, Ex. A to Pl.'s Resp.; *see id.* ¶ 9 (stating that she told her lawyer that the first time she had heard of Neo-Synephrine® as the cause of her dependency and ongoing congestion was in June 2003). Urso's rebuttal affidavit establishes, at most, that she gained actual knowledge of the

---

[8] The record in this case has been presented in a fragmented format, with responses to Rule 56.1 statements of fact being filed weeks after the response memorandum, for example. Additionally, Bayer filed a supplemental statement of material facts, without prior authorization from the court to which Urso did not respond. The one additional fact in the supplemental statement of material facts, testimony from Dr. Desai regarding the use of the term "rebound congestion," does not affect the court's analysis.

7

precise wrongful cause of her injury and her potential legal claim in June 2003. However, it is not necessary for a plaintiff to discover the "consequences of the injury or the full extent of her injuries" before the statute of limitations begins to run. *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 899-900 (Ill. 1995). Additionally, her averment that she "never had reason to know" of the connection of Neo-Synephrine® and her alleged injury before June 2003 is conclusory and cannot, absent factual support from the record, establish a sufficient question of fact as to that issue. *See, e.g.*, *Brown v. Family Dollar Stores of In., L.P.*, 534 F.3d 593, 597 (7th Cir. 2008) ("[A] person cannot manufacture a genuine issue of fact by submitting an affidavit that contradicts prior deposition testimony.").

Urso fails to address, either in her version of the facts or her rebuttal affidavit, events that transpired in the thirteen years between when she began using Neo-Synephrine® and the time when her husband met Mr. Keslo. The record shows that, possibly as soon as 1991 and definitely no later than September 2000, Urso knew that she had a medical condition, namely a stuffy nose and breathing difficulties, that her condition was relieved only by the use of Neo-Synephrine®, and that she felt she was unable to discontinue her use of Neo-Synephrine® despite her doctors' advice and prescriptions for other drugs.

Urso seems to be arguing, although she does not do so explicitly, that none of these facts demonstrate that she knew her problems had a wrongful cause. *See* Pl.'s Resp. to Def. Bayer Corp.'s Statement of Material Facts ¶¶ 6 (stating that the doctor initially suggested Urso use Neo-Synephrine®), 9 (opining that Neo-Synephrine® was the only product that relieved Urso's symptoms), 12 (noting that no doctor told her to quit using decongestants entirely). Urso cites, briefly, to the deposition testimony of Dr. Desai to negate the import of her initial meetings. She argues that she was not told of any potential problems from using Neo-Synephrine®, asserting

that Dr. Desai did not tell her that Neo-Synephrine® was addictive and did not explain its "rebound effect." Pl.'s Resp. at 14-15 (citing to Desai Dep. at 26:24, 26:20, attached as Ex. I to Pl.'s Resp.). However, a fuller reading of Dr. Desai's deposition testimony shows that Dr. Desai stated that, although the medical records did not go back to 1991 and she has no independent recollection of Urso, she always gives instructions regarding maximum use to patients when recommending Neo-Synephrine®, and that she typically does try to explain "rebound effect" but that patients do not understand the term, so she usually tells them they will become "hooked up to it." *See* Desai Dep. at 10:8-19 (records go back only to 1998), 17:18-21 (no recollection), 25:21-26:17, 26:20-27:2 (explanation of "rebound effect"). Urso seems to imply that because her doctors did not definitively tell her that Neo-Synephrine® was the cause of her problems, her claim did not accrue until June 2003.

Urso's argument is unpersuasive. Illinois case law suggests that, when a plaintiff has knowledge of an injury, an accurate medical diagnosis is irrelevant to the issue of whether a plaintiff is on notice of its exact wrongful cause. *See, e.g.*, *Witherell v. Weimer*, 421 N.E.2d 869, 875 (Ill. 1981) (rejecting that a doctor's denial that the birth control pill caused the plaintiff's medical problems affected the analysis of when a claim accrued against the drug manufacturer). Definitive knowledge of causation is not required because "the term 'wrongfully caused,' does not mean knowledge by a plaintiff of a specific defendant's negligent act or knowledge that an actionable wrong was committed . . . ." *See Hoffman v. Orthopedic Sys., Inc.*, 765 N.E.2d 116, 122 (Ill. App. Ct. 2002) (reasoning that suspicion that the injury gave rise to a medical malpractice claim rather than a product liability claim did not toll the statute of limitations against the manufacturer).

Urso knew that she had severe breathing problems on a long-term basis that were beyond

9

the temporary congestion problems for which the medication she was taking was indicated. Although it is possible that, at the beginning, Urso could have believed that her chronic condition was related to some natural cause, as time passes such a belief becomes less credible. *See id.* at 121 ("To determine when a plaintiff reasonably should have discovered that an injury was caused by defendant's wrongful conduct, courts look to the nature of the injury itself; the more obvious the injury, the more easily a plaintiff should be able to determine its cause."). Here, Urso asks the court to accept that over a period of some thirteen years, she suffered daily congestion so extreme that she thought she would die unless she used Neo-Synephrine® and did not have any idea that the underlying cause could be wrongful. She urges this conclusion even though, during that time, two doctors specifically advised that Urso discontinue Neo-Synephrine®. Indeed, one of them diagnosed her as having "chronic rhinitis with likely addiction . . . to nasal decongestant drops" and provided an explanation of rebound congestion. Urso quibbles with what terms were used by the doctors but does not directly deny that she understood the substance of what the doctors were conveying to her, namely that continuous use of Neo-Synephrine® could cause her harm.

Urso primarily cites to a recent Seventh Circuit case, *Aebischer*, in support of her argument that the question of when she knew or should have known about the injury and its wrongful cause must go to the jury. In *Aebischer*, the plaintiff had her left hip replaced with a prosthetic device. 535 F.3d at 733. Her doctor warned her that she was at increased risk for wear because she was young and physically active, but he estimated that the prosthetic would last fifteen to twenty years. *Id.* Within four years, the plaintiff was suffering from extreme pain and was told that she needed a second replacement hip because of bone tissue degeneration. *Id.* The plaintiff finally had surgery to replace the hip in June 2003, about a year and a half after she

had learned of the bone tissue problems. *Id.* After the second surgery, the plaintiff was informed that the first prosthetic hip had exhibited "advanced or catastrophic failure." *Id.*

The issue before the Seventh Circuit was whether the plaintiff was on notice when the doctor informed her that she had tissue degeneration, or eighteen months later when she was informed that the first prosthetic device had failed. The court reasoned that there was evidence in the record to support a finding that the plaintiff believed that her problems with the hip resulted from her own personal characteristics, namely her age and activity level, and that she did not discover that the hip prosthetic itself was the problem until the surgery. *Id.* at 734. This demonstrated a material issue of fact about the date on which the plaintiff was placed on inquiry notice. *Id.* Urso cites to nothing in the record that demonstrates that a medical professional offered her any information suggesting that her dependence and ongoing congestion had an alternate natural cause such that Urso's lack of suspicion of a wrongful cause is reasonable. Rather, the record shows that, no later than September 2000, Urso knew that she had an injury, namely a perpetually stuffy nose and breathing difficulties, that her condition was relieved only by the use of Neo-Synephrine®, that she was unable to discontinue her use of Neo-Synephrine® despite her doctors' advice, and that her doctor believed she was addicted to a product recommended for short-term relief of nasal congestion.

Urso overstates the degree of connection between her injury and her legal rights when she asserts that the connection is a question of fact. Although Urso frames the issue as when she was "aware of her right to sue," Pl.'s Resp. at 16, this formulation of when a claim accrues has been explicitly rejected by the Illinois Supreme Court. *See Knox Coll. v. Celotex Corp.*, 430 N.E.2d 976, 980 (Ill. 1981) (stating that the second element "does not connote . . . knowledge of the existence of a cause of action"). The fact that Urso argues that she did not know of her precise

legal cause of action until June 2003 is of no import; Urso knew the relevant facts in September 2000 and at that point she had the burden "to inquire further as to the existence of a cause of action." *Witherell*, 421 N.E.2d at 874. Indeed, the discovery rule cannot mean that a plaintiff is not on inquiry notice until she has established to a degree of certainty that she has a viable a cause of action. *See Nolan*, 421 N.E.2d at 868 (emphasizing that the discovery rule "is not the same as a rule which states that a cause of action accrues when a person knows or should know of both the injury and the defendant's negligent conduct"); *Nelson v. Jain*, 526 F. Supp. 1154 (N.D. Ill. 1981) (noting that making the receipt of legal advice the triggering event for the discovery rule "would place a premium on being an ostrich, on blinding oneself to the obvious inferences from plain facts").

The court concludes that, after Dr. Calabria diagnosed Urso as having chronic rhinitis with likely physiological addiction to Neo-Synephrine® and discussed with her the issue of rebound congestion, Urso was put on inquiry notice. *Golla*, 657 N.E.2d at 897 (citing *Nolan*, 421 N.E.2d at 868) ("If only one conclusion can be drawn from the undisputed facts, then the timeliness of the plaintiff's complaint becomes a question of law for the trial court to determine."). Thus, there is no genuine issue of fact as to the time at which the statute of limitation began to run and the claim became time barred on September 12, 2002, which is before Urso filed suit. Summary judgment is granted in favor of Bayer and the case is terminated.

## III. CONCLUSION

The defendant's motion for summary judgment is granted for the reasons stated above.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: February 2, 2009